**LITTLER MENDELSON, P.C.**
Eric A. Savage, Esq. (N.J. Bar No. 010491986)
Jessica C. Pooran, Esq. (N.J. Bar No. 336962021)
One Newark Center, 8th Floor
Newark, New Jersey 07102
P: 973-848-4700
E: ESavage@littler.com
E: JPooran@littler.com
*Attorneys for Defendant*
*ExlService.com, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARYBETH TASSINARI,<br><br>      Plaintiff,<br><br>vs.<br><br>EXL SERVICE, JOHN DOES 1-10,<br>ABC CORPS. 1-10,<br><br>      Defendants. | Case No: 3:23-cv-2824<br><br>**NOTICE OF REMOVAL**<br><br><u>Electronically Filed</u> |

TO:   **THE CLERK AND THE HONORABLE JUDGES**
      **OF THE UNITED STATES DISTRICT COURT**
      **FOR THE DISTRICT OF NEW JERSEY**

Defendant EXLService.com, LLC, sued herein as EXL Service ("Defendant"), hereby files this Notice of Removal of the above-captioned action to the United States District Court for the District of New Jersey, from the New Jersey Superior Court, Monmouth County, where the action is now pending, as provided by Title 28, United States Code, Chapter 89, and states:

1.   Plaintiff Marybeth Tassinari ("Plaintiff"), purporting a resident of New Jersey, commenced this action against Defendant on April 24, 2023, by filing a Complaint in the Superior Court of New Jersey, Law Division, Monmouth County, captioned "*Marybeth Tassinari v. EXL SERVICE, JOHN DOES 1-10, ABC CORPS. 1-10,*" and bearing Docket No. MON-L-001279-23 ("the State Court Action").  The State Court Action is now pending in that Court.

4864-7659-9908.1 / 083406-1078

2.      Defendant was served with the Summons and Complaint on April 27, 2023. This Notice of Removal is filed within 30 days of that date, as required by 28 U.S.C. § 1446(b).

3.      Collectively attached hereto as **Exhibit A** is a copy of all process, pleadings and orders served upon Defendant in the State Court Action, pursuant to 28 U.S.C. § 1446(a).

4.      The State Court Action is between citizens of different states and is a civil action over which the district courts of the United States have original jurisdiction by virtue of diversity jurisdiction granted by 28 U.S.C. § 1332.

5.      Specifically, Plaintiff is an individual and resident and, upon information and belief, a citizen of the State of New Jersey. *Vaughn v. Vaughn*, 674 Fed. Appx. 145, 146 (3d Cir. 2017) ("[I]t is the citizenship of the parties at the time the action is commenced which is controlling."); *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018) ("[W]hen the jurisdictional basis is diversity of citizenship, diversity is assessed as of the time the complaint was filed."); *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) (citizenship is determined by domicile); *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ("Where one lives is prima facie evidence of domicile.").

6.      Defendant is not a citizen of the State of New Jersey. A corporation such as Defendant is a citizen of the state in which it is incorporated and in which it has its principal place of business, 28 U.S.C. § 1332(c)(1), and a limited liability company's citizenship for purposes of diversity jurisdiction is the citizenship of its members. *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). Defendant is a limited liability corporation, incorporated in the State of Delaware with one limited partner, specifically EXL Holdings, Inc., a Delaware corporation with its principal place of business in New York, New York. Therefore, Defendant is a citizen of States of Delaware and New York. *See Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct.

-2-

1181, 1186, 1192-93 (2010) ("principal place of business" of corporation "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," which is often "metaphorically called its 'nerve center'").

7.    Fictitious defendants are disregarded in determining diversity jurisdiction. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."). *See Mucci v. Decision One Mortg.*, No. CIV.A. 12-1840 JLL, 2012 WL 3757035, at *3 (D.N.J. Aug. 9, 2012), *report and recommendation adopted*, No. CIV.A. 12-1840 JLL, 2012 WL 3757290 (D.N.J. Aug. 28, 2012) ("The citizenship of parties with fictitious names such as 'John Doe' or ABC Corporation are disregarded for purposes of determining diversity.").

8.    In addition to the jurisdictional requirements for removal, under 28 U.S.C. §1446(b)(2)(A), all defendants who have been properly joined and served must join in or consent to the removal of the action. *See Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir.1995); *Lewis v. Rego*, 757 F.2d 66, 68 (3d. Cir.1985).   This "rule of unanimity" requirement may be disregarded when a non-resident defendant has not been served at the time the removing defendants filed their petition. *See Balazik*, 44 F.3d at 213; *Granovsky v. Pfizer, Inc.*, 631 F.Supp.2d 554, 559 (D.N.J.2009); *see also R.K. v. Bender*, No. 17CV1299ESJAD, 2017 WL 3302690, at *2 (D.N.J. July 7, 2017), report and recommendation adopted, No. CV171299ESJAD, 2017 WL 3299037 (D.N.J. Aug. 1, 2017) ("Under the plain language of 28 U.S.C. § 1446(b)(2)(A), only defendants who 'have been properly joined and served' must consent to or join in a removal.").

-3-

9.  There are no other individual defendants named in the State Court Action. Therefore, the requirement for unanimous consent among served defendants has been met.

10.  Accordingly, complete diversity of citizenship exists now and at the time the State Court Action was filed because Plaintiff and Defendant are citizens of different states.  Jurisdiction is thus proper under 28 U.S.C. § 1332.

11.  The matter in controversy in the State Court Action exceeds the sum or value of $75,000, *see* 28 U.S.C. § 1332(a), computed on the following basis:

(a)  In the Complaint, Plaintiff alleges violates New Jersey law, including the New Jersey Law Against Discrimination ("NJLAD"). (*See* Ex. A).  Plaintiff seeks compensatory damages, punitive damages, emotional distress damages, attorneys' fees, and costs of suit. (*See* Ex. A, Complaint, Wherefore Paragraphs).

(b)  According to a reasonable reading of the Complaint, the amount in controversy is in excess of $75,000.  *See Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993) (where plaintiff does not set a limit for damages, the Court should make a reasonable reading of the value of the claim that plaintiff has asserted and come to an independent valuation of the amount plaintiff has claimed).

(c)  Plaintiff also seeks punitive damages.  "The Court must consider the plaintiffs' demand for punitive damages when calculating the amount in controversy and can aggregate these damages with the requested compensatory damages." *Goralski v. Shared Techs., Inc.*, No. CIV.A. 09-2461 (KSH), 2009 WL 2460752, at *5 (D.N.J. Aug. 7, 2009) (*citing Golden v. Golden,* 382 F.3d 348, 355 (3d. Cir. 2004)) (noting that jurisdictional amount in controversy may be satisfied on the basis that the complaint seeks punitive damages).

(e)  Aggregating these amounts, as is appropriate for evaluating removal based on

-4-

diversity jurisdiction, the amount in controversy exceeds the jurisdictional minimum of $75,000.00. *See Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (aggregating punitive damages and attorney's fees when calculating amount in controversy); *see also Raspa v. Home Depot*, 533 F.Supp.2d 514, 522 (D.N.J. 2007) (noting that even on its own, "a request for punitive damages will generally satisfy the amount in controversy requirement[.]").

(f)    Aggregating these amounts, the amount in controversy exceeds the jurisdictional minimum of $75,000. *See* 28 U.S.C. § 1332(a).

12.    Accordingly, this Court possesses original jurisdiction over this action under 28 U.S.C. § 1331(a), which provides for original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen or subject of a foreign state.

13.    The Notice of Removal has been filed in the United States District Court for the District of New Jersey, the district court of the United States for the district and division within which the State Court Action is pending, as required by 28 U.S.C. §§ 1441(a) and 1446(a).

14.    Upon filing of the Notice of Removal, Defendant gave written notice thereof to Loryn M. Lawson, Esq., Byrnes O'Hern & Heugle, 195 E. Bergen Place, Red Bank, New Jersey 07701, attorneys for Plaintiff Marybeth Tassinari, pursuant to 28 U.S.C. §1446(d).

15.    By filing the Notice of Removal, Defendant does not concede Plaintiff is entitled to any damages or waive any defenses available to it at law, in equity or otherwise.

4864-7659-9908.1 / 083406-1078

-6-

**WHEREFORE**, Defendant respectfully requests that this action proceed in this Court as an action properly removed to it.

**LITTLER MENDELSON, P.C.**
*Attorneys for Defendant*
*ExlService.com, LLC*

Dated:  May 24, 2023

By: _/s/ Eric A. Savage_
Eric A. Savage, Esq.
Jessica C. Pooran, Esq.
One Newark Center, 8th Floor
Newark, New Jersey 07102
P: 973-848-4700
E: ESavage@littler.com
E: JPooran@littler.com

4864-7659-9908.1 / 083406-1078

# EXHIBIT A

**BYRNES O'HERN & HEUGLE**
Loryn M. Lawson, Esq. ID Number: 10812004
195 E. Bergen Place
Red Bank, New Jersey 07701
Telephone: (732) 219-7711
Attorneys for Plaintiff Marybeth Tassinari

| | |
|---|---|
| MARYBETH TASSINARI, <br>     Plaintiff, <br><br> v. <br><br> EXL SERVICE, JOHN DOES 1-10, <br> ABC CORPS. 1-10, <br><br>         Defendants. | SUPERIOR COURT OF NEW JERSEY <br> MONMOUTH COUNTY <br> LAW DIVISION <br> DOCKET NO.:MON - L-  -23 <br><br> Civil Action <br> **COMPLAINT** |

Plaintiff, Marybeth Tassinari, by way of Complaint against the Defendants, hereby alleges as follows:

## FACTUAL BACKGROUND

1. Plaintiff Marybeth Tassinari (hereinafter "Plaintiff" or "Ms. Tassinari"), was employed by Defendant EXL Service ("EXL") from August 2018 until her unlawful termination on October 24, 2022.

2. Defendant EXL is an analytics and digital solutions company which markets itself as a company that is founded upon principles of integrity and respect.

3. During the relevant time period, JOHN DOES 1-10, are currently unknown employees who were either senior management level employees who controlled Plaintiff's

1

workplace, and supervised Plaintiff and aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, the Defendant ratified, embraced and added to his conduct.

4. During the relevant time period, ABC Corp. 1-10 are unknown affiliated corporations or corporate entities who have liability for the claims set forth herein.

5. When initially hired in August 2018, Ms. Tassinari was hired as the Assistant Vice President, Strategic Marketing Leader, Insurance Business Unit.

6. In both 2018 and 2019, the Insurance Department was recognized company-wide as the "Business Unit of the Year" for exceptional growth and client development.

7. In 2020, Ms. Tassinari received the "RevMasters Award" from EXL's Chief Marketing Officer and Chief Growth & Strategy Officer due to her significant impact and growth.

8. In further recognition of Ms. Tassinari's success at EXL, in 2021, Ms. Tassinari was promoted to Senior Assistant Vice President, Global Strategic Marketing Leader, Insurance; a position which tasked Ms. Tassinari with global responsibility based on her outstanding performance and ability to produce result, as well as the ability to effectively manager and mentor reports.

9. Additionally in 2021, Ms. Tassinari received the "Game Changer Award" from EXL's Chief Growth & Strategy Officer due to Ms. Tassinari's substantial contribution through consistent performance.

10. During Ms. Tassinari's employment with EXL, the performance summaries of Ms. Tassinari were exemplary and, but for 2020 due to the Coronavirus pandemic impact, Ms. Tassinari received not only an increased salary, but also sizeable bonuses and stock grants.

11. In the spring of 2021, Ms. Tassinari had conversations with Anita Mahon of EXL (Ms. Tassinari's skip manager and Chief Strategy & Growth Officer) during which Ms. Tassinari's promotional path was discussed. Ms Mahon advised Ms. Tassinari that there was a possibility of "fast tracking" a promotion to Vice President so she should be ready for a possible promotion to Vice President in two years.

12. Ms. Tassinari was on a positive employment trajectory with EXL until her return from a statutorily protected leave of absence due to her own medical condition on or about February 7, 2022.

13. While Ms. Tassinari was out of the office on FMLA leave, a new Chief Marketing Officer ("CMO") was hired. Shortly following the hiring of the new CMO, there was an internal reorganization of the Marketing Department. In connection with this reorganization, Ms. Tassinari's reporting hierarchy changed and, Samantha Downing, became Ms. Tassinari's manager. Prior to the reorganization, Ms. Downing was a lateral peer of Ms. Tassinari.

14. Ms. Downing was well-aware of the reason why Ms. Tassinari was compelled to take a statutorily protected leave due to her own medical condition.

15. Ms. Downing began to remove responsibilities from Ms. Tassinari's purview due to a misperception by Ms. Downing that Ms. Tassinari's medical condition impeded her ability to complete these tasks.

3

16.     Ms. Downing also became quite critical of Ms. Tassinari's work product and inexplicably would often yell at Ms. Tassinari.

17.     On August 5, 2022, Ms. Tassinari had a Mid-year performance review discussion with Ms. Downing and no major concerns were raised by Ms. Downing to Ms. Tassinari.

18.     On August 9, 2022, Ms. Tassinari had a meeting with Ms. Downing which ended up being very hostile and Ms. Tassinari believed that Ms. Downing's conduct created an unlawful working environment. During that meeting, Ms. Tassinari advised Ms. Downing that she would be contacting resources with respect to her concerning conduct.

19.     On or about August 18, 2022, Ms. Tassinari contacted both human resources and EXL's Chief Marketing Officer with the hope that the matter would be properly investigated and remedied as she had a good faith belief that Ms. Downing's improper conduct created a hostile work environment in violation of the Law Against Discrimination, as well as company policies.

20.     Unfortunately, not only did human resources wholly fail to conduct an investigation into Ms. Tassinari's complaints, EXL allowed Ms. Tassinari to be retaliated against due to her good faith belief with human resources.

21.     Almost immediately following Ms. Tassinari's complaint with human resources, responsibilities that Ms. Tassinari had for her department were removed while this was not done to other employees in a lateral position to Ms. Tassinari. By way of limited example, on October 3, 2022, Ms. Tassinari found out that she no longer was able to approve expenses for her direct reports.

4

22.   Notably, while responsibilities were removed from Ms. Tassinari that were not removed from her lateral colleagues, she was also held to a higher standard with respect to certain tasks that other peers of Ms. Tassinari were not required to meet.

23.   Additionally, on October 5, 2022, Ms. Tassinari was informed that she was no longer allowed to participate in the Portfolio Architecture Initiative - a company-wide initiative on which her presence would greatly assist in her pathway to a promotion.

24.   Not only was Ms. Tassinari removed from the initiative, but she also was omitted from meetings which were critical to her role at EXL by Ms. Downing and was not even advised what was discussed after the conclusion of the meetings.  These meetings and decisions were strategic in nature and critical to Ms. Tassinari's role with the Company.

25.   On October 14, 2022, Ms. Tassinari was advised by Ms. Downing and a representative from human resources on a zoom meeting.  During this meeting, Ms. Tassinari conveyed that her being placed on a PIP (with years of record success with the Company) appeared to be retaliatory conduct due her complaint the month prior.

26.   Rather than take Ms. Tassinari's concerns seriously, the human resource representative immediately off the cuff denied same.

27.   With the hope that the tenuous basis on which Ms. Tassinari was placed on a PIP could be resolved, Ms. Tassinari requested that they all could have a follow-up meeting in two weeks. In line with his dismissive treatment of Ms. Tassinari, the human resources representative immediately said no and insisted that they were not to meet again until November 11, 2022.

5

28.     The transparent motive by the use of the PIP is highlighted by the fact that Ms. Tassinari was not allowed sufficient time to correct any alleged deficiencies and suffered the ultimate retaliation of termination six business days following Ms. Tassinari being placed on the PIP.

29.     The facts set forth in the preceding paragraphs confirm that Ms. Tassinari was sacrificed for reasons that are discriminatory and retaliatory.

30.     The Defendants' conduct violates New Jersey law, including the Law Against Discrimination; conduct which has caused the Plaintiff a significant decrease in compensation, as well as emotional distress.

## FIRST COUNT
## DISPARATE TREATMENT AND DISCRIMINTION DUE TO DISABILITY

31.     The plaintiff repeats and realleges the allegations of paragraphs 1 through 30 as if fully set forth at length herein.

32.     The treatment received from Defendant EXL, ABC Corps. 1-5 and John Does 1-5, jointly and severally, violates that LAD which prohibits unlawful employment discrimination against any person because of race, religion, age, gender, handicap, marital status, etc.

33.     The Plaintiff's medical condition for which she took statutorily protected leave fits into the definition of handicap under the LAD.

6

34.     Additionally, Ms. Downing made it clear to Ms. Tassinari that, following her return from the statutorily protected leave, that she was under the perception that Ms. Tassinari suffered from a disability.

35.     Ms. Downing unlawfully treated Ms. Tassinari in a negative matter based upon her perceptions of Ms. Tassinari having a disability.

36.     Defendants did not have an effective anti-discrimination in policy in place, have not maintained an anti-discrimination policy that is current and effect, and Defendants' anti-discrimination policy existed in name-only.

37.     Defendants did not maintain useful formal and information complaint structures for victims of discrimination, harassment, or retaliation.

38.     Defendants did not properly train their supervisors and/or employees on the subject of discrimination, harassment, and retaliation.

39.     Defendants failed to institute appropriate monitoring mechanisms to check the effectiveness of the policies and complaint structures.

40.     Defendants did not have commitment from the highest levels of management that discrimination and harassment will not be tolerated.

41.     As a result of the above harassing and discriminatory conduct, Plaintiff experiences ongoing and debilitating emotional distress and experiences significant economic damages.

42.     As the employer and/or supervisor of Plaintiff, Defendants are vicariously, strictly, and/or directly liable to Plaintiff pursuant to the New Jersey Law Against Discrimination.

7

WHEREFORE, Ms. Tassinari demands judgment against the Defendants awarding her compensatory damages, punitive damages, attorneys' fees, costs of suit and any other further relief that the Court deems equitable and just.

## SECOND COUNT
## UNLAWFUL RETALIATION/IMPROPER REPRISAL IN VIOLATION OF THE LAD

43.     The Plaintiff repeats and realleges the allegations of paragraphs 1 through 42 as if fully set forth at length herein.

44.     After the receipt of good faith, documented concerns pertaining to Ms. Downing's perceived unlawful conduct, rather than adequately remedy the unlawful situation, Ms. Tassinari was subjected to extreme, unlawful retaliation by the Defendants, including the ultimate adverse act of termination of employment.

45.     Defendants are vicariously, strictly, and/or directly liable to Plaintiff unlawful retaliation in violation of the LAD.

46.     As a result of the actions of the Defendants, Ms. Tassinari suffered, and continues to suffer, injuries, including but not limited to significant loss of revenue, emotional distress, reputational damage negatively impacting her employability within the industry, humiliation, embarrassment, and pain and suffering.

47.     Defendants' unlawful conduct was, and remains, malicious, egregious, willful and in reckless disregard of Ms. Tassinari's rights for which punitive damages are appropriate.

8

WHEREFORE, Ms. Tassinari demands judgment against the Defendants awarding the Plaintiff compensatory damages, punitive damages, attorneys' fees, costs of suit and any other further relief that the Court deems equitable and just.

### DESIGNATION OF TRIAL COUNSEL PURSUANT TO RULE 4:25-4

Loryn M. Lawson, Esq. is hereby designated as trial counsel on behalf of the Plaintiff in the within matter.

### JURY DEMAND

The Plaintiff demands a trial by jury as to all issues.

### CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify to the best of my knowledge, information and belief, the matter in controversy is not the subject of an Arbitration or Administrative Proceeding, and that no other court or Arbitration or Administrative Proceeding is contemplated.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

BYRNES O'HERN & HEUGLE
Attorneys for Plaintiff Marybeth Tassinari

By:_____
LORYN M. LAWSON

Dated: April 24, 2023

9