<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARYBETH TASSINARI**, <br><br> Plaintiff, <br><br> v. <br><br> **EXL SERVICE**, *et al.*, <br><br> Defendants. | Civil Action No. 23-2824 (ZNQ) (DEA) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

      This matter comes before the Court upon a Motion to Compel Arbitration (the "Motion," ECF No. 10) filed by Defendant EXLService.com, LLC[1] ("Defendant"). Defendant filed a brief in support of its Motion ("Moving Br.," ECF No. 10-1), along with the declaration of Eric A. Savage ("Savage Decl.," ECF No. 10-2) and the declaration of Martin Whitehead ("Whitehead Decl.," ECF No. 10-3). Plaintiff Marybeth Tassinari ("Plaintiff") filed an opposition ("Opp'n Br.," ECF No. 11), along with a declaration ("Tassinari Decl.," ECF No. 11-1). Defendant replied ("Reply Br.," ECF No. 12) and filed two additional declarations ("Savage Reply Decl.," ECF No. 12-1; "Whitehead Reply Decl.," ECF No. 12-2). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2] For the reasons outlined below, the Court will DENY Defendant's Motion to Compel Arbitration.

---

[1] The Complaint identifies Defendant EXLService.com, LLC as "EXL Service."
[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

1

I.  **BACKGROUND**

  A.  **Procedural Background**

Plaintiff filed a Complaint in the New Jersey Superior Court alleging unlawful termination of her employment with Defendant.  The Complaint asserts claims under the New Jersey Law Against Discrimination for disparate treatment and discrimination due to disability (Count One) and unlawful retaliation / improper reprisal (Count Two). (Compl. ¶¶ 31–47, ECF No. 1 at 8.)  On May 24, 2023, Defendant removed the case to this Court on diversity jurisdiction grounds.  (ECF No. 1.)  The instant Motion to Compel followed.  (ECF No. 10.)

  B.  **Factual Background**

The Court gleans the following facts from the parties' submissions filed in connection with the Motion to Compel.[3]

On various occasions while employed by Defendant, Plaintiff "received grants" of stock from Defendant for her "significant contribution" to the company, including "helping EXL manage its priorities" and contributing to "EXL's growth and shareholder returns." (Whitehead Decl. ¶ 4; *id.*, Ex. B at 2–3 (the "Equity Emails"); Tassinari Decl. ¶¶ 4–5.)  Defendant emailed Plaintiff to this effect on March 1, 2021 and March 1, 2022, outlining each time the details of an Equity Award.[4]  (Equity Emails at 2–3.)  The relevant Equity Emails instructed: "You will receive a separate communication when the grants are available online for your review and acceptance.  To finalize the receipt of your Equity Award, you must accept the same within two weeks from the date you receive the final communication, failing which the stock will be deemed as accepted."[5]

---

[3] The Court does not summarize the allegations with respect to Plaintiff's employment discrimination claims because they are not relevant to the instant Motion.
[4] Defendant also emailed Plaintiff about an equity award on March 1, 2019 that is not tied to any disputed arbitration agreement with regard to the instant Motion to Compel. (Whitehead Decl. ¶ 4; Equity Emails at 1; Tassinari Decl. ¶ 4.)
[5] The Equity Email from 2021, but not the Equity Email from 2022, adds: "However, to qualify for the vesting, you need to accept the grants online or else the grant will get forfeited." (Equity Emails at 2–3.)

(*Id.*)  The Equity Emails further indicated that Plaintiff should use (or create, if a "first time recipient") her username and password to access her stock plan account on the website of Defendant's service partner, Fidelity Stock Plan Services ("Fidelity").  (*Id.* (directing Plaintiff to Fidelity's website to find "[t]he equity grant agreement, vesting schedule and other grant related details").)

According to the Whitehead Declaration submitted by Defendant,[6] after logging into Fidelity's online portal, an EXL employee "receives three documents for review and execution" in connection with an equity award: "the grant agreement, [a] plan document, and [an] arbitration agreement."  (Whitehead Decl. ¶¶ 6–7.)  "[W]hen an employee is ready to sign and accept any document, there is a button to which an employee must specifically navigate and click in order to electronically 'sign.' Below the Arbitration Agreement, it states, 'by clicking "I agree" I confirm I am agreeing to the terms of the Arbitration Agreement.'"  (*Id.* ¶ 9.)  The Whitehead Declaration further explains that Fidelity's portal "allows users to complete the paperwork on their own time, at their own pace, and from any location."  (*Id.* ¶ 7.)  A signature in Fidelity's online portal automatically creates an authentication trail in the software that Fidelity or Defendant can thereafter access.  (*Id.* ¶ 10.)

Each of the arbitration agreements that constituted part of the paperwork for Plaintiff's 2021 and 2022 Equity Awards (the "Arbitration Agreements") is an exhibit to another agreement titled "Restricted Stock Unit Agreement (U.S.)."  (*Id.*, Ex. C (Restricted Stock Unit Agreements, or the "Stock Agreements," attaching each Arbitration Agreement as an Exhibit A).)  Plaintiff's name appears, in typed font, at the top and bottom of both Stock Agreements as well as at the bottom of both corresponding Arbitration Agreements.  (*See* Whitehead Decl., Ex. C at 12, 18, 22,

---

[6] The information discussed in this paragraph as provided by the Whitehead Declaration was not included in the Equity Emails that Defendant sent to Plaintiff.  (*See* Equity Emails.)

24, 30, 34[7].) Also at the bottom of both Arbitration Agreements is an indication that the documents were "[s]igned [e]lectronically" along with a date and time stamp. (*Id.* at 22–23, 34–35.) The 2021 and 2022 Arbitration Agreements are time stamped "3/21/2021 06:16 PM" and "03/16/2022 02:41 PM," respectively. (*Id.* at 23, 35.) According to the Tassinari Declaration, Plaintiff "do[es] not recall agreeing to the [A]rbitration [A]greements." (Tassinari Decl. ¶ 9; *see also id.* ¶¶ 6–8.)

## II.  JURISDICTION

The Court has diversity jurisdiction over the claims herein pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

## III.  LEGAL STANDARD

"The FAA federalizes arbitration law and 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Courts are authorized to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Additionally, under section three of the FAA, parties may "apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3).

When deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir.

---

[7] The Court cites to Exhibit C using the page numbers imposed by the CM/ECF system because the document lacks its own internal pagination.

2014) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). To conduct this inquiry, the court shall apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

### IV.     DISCUSSION

Defendant seeks to enforce the Arbitration Agreements and either stay or dismiss the case pending resolution via arbitration.

In determining whether a valid arbitration agreement exists, a court must first decide whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard applies when arbitrability is "apparent, based on the face of a complaint, and documents relied upon in the complaint . . . ." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks omitted). However,

> [w]here the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record.

*Noonan v. Comcast Corp.*, Civ. No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017). In such circumstances, "limited discovery is necessary" to determine if the arbitration agreement is enforceable. *Corchado v. Foulke Mgmt. Corp.*, Civ. No. 15-6600, 2017 WL 627427, at *3 (D.N.J. Feb. 15, 2017) (citing *Guidotti*, 716 F.3d at 774). Afterwards, "the court may entertain a renewed motion to compel arbitration, this time judging the motion under a [Rule 56] summary judgment standard." *Guidotti*, 716 F.3d at 776. Here, not only has the Complaint failed to establish with

clarity that the parties have agreed to arbitrate,[8] but Plaintiff has come forward with a sworn statement that she did not intend to be bound by the Arbitration Agreements. (Tassinari Decl. ¶¶ 6–9.) Under the circumstances, it would be inappropriate to apply a Rule 12(b)(6) standard to the instant motion. The Court will apply a Rule 56 standard. *See Guidotti*, 716 F.3d at 774.

Defendant argues that Plaintiff electronically signed and agreed to be bound by the terms of the Arbitration Agreements, dated March 21, 2021 and March 16, 2022, respectively, and that her electronic signatures are "fully enforceable despite their electronic form." (Moving Br. at 5, 11, 12 (collecting cases).) Insisting that Plaintiff herself signed the Arbitration Agreements, Defendant states that the Fidelity online portal required her to sign-in with her unique username and password before she could complete the Equity Award process. (*Id.* at 2–3.) Defendant argues that the Arbitration Agreements are valid and enforceable because, in addition to Plaintiff's assent to be bound as manifested by her electronic signatures, (*id.* at 12), there was consideration because Plaintiff agreed to arbitrate disputes in exchange for receiving company stock that provided "real value" to Plaintiff. (*Id.* at 3, 13.) Defendant underscores that both New Jersey and federal public policy "strongly favor" arbitration and urges the Court to compel arbitration here because the enforceable Arbitration Agreements "explicitly and unambiguously notify Plaintiff that, by signing the [Arbitration] Agreement[s], she is waiving her right to proceed in court or have her claims heard by a jury." (*Id.* at 6–9, 11.) Defendant maintains that Plaintiff's employment discrimination claims fall within the scope of the Arbitration Agreements. (*Id.* at 15–16.)

Plaintiff argues that there is no "concrete manifestation" of her assent to be bound by the Arbitration Agreements, emphasizing that her handwritten signature appears nowhere on the

---

[8] To the contrary, the Complaint certifies that "the matter in controversy is not the subject of an Arbitration or Administrative Proceeding, and that no other court or Arbitration or Administrative Proceeding is contemplated." (Compl. at 9.)

Arbitration Agreements and that in fact she "disputes that she signed the provisions" in her declaration. (Opp'n Br. at 7–9.) Plaintiff offers a competing theory as to how the Arbitration Awards appear to have been accepted: according to the Equity Emails, if an employee fails to take action on a proffered Equity Award "within two weeks from the date [the employee] receive[s] the final communication . . . the stock will be deemed as accepted." (*Id.* at 9–10.) Plaintiff argues that this automated acceptance distinguishes her case from "all of the cases cited [by Defendant] as a basis to compel arbitration" because those other cases have "a component in which the employee had to take some affirmative action to demonstrate her intention to be bound to the arbitration provisions." (*Id.* at 9.) Given that the Arbitration Agreements here are time stamped more than two weeks after Defendant sent Plaintiff the Equity Emails,[9] Plaintiff argues that "[t]here is nothing to indicate if this was an automatic acceptance per the Equity [Emails] or if Ms. Tassinari affirmatively agreed to same . . . which she vigorously disputes."[10] (*Id.* at 9–10.)

In its reply brief, Defendant counters that Plaintiff's "self-serving and legally insufficient statements regarding an alleged failure to recall the Arbitration Agreements fall far short of satisfying Plaintiff's burden under the FAA" to show a genuine issue of material fact, and that "courts adjudicating motions to compel arbitration have routinely found that a party's inability to recall receiving a document does not amount to a genuine dispute of fact." (Reply Br. at 4.)

Here, the Court finds that there is a genuine issue of material fact that precludes it from compelling arbitration. Plaintiff's declaration that she does not recall agreeing to, and moreover

---

[9] The Equity Emails were sent to Plaintiff on March 1, 2021 and March 1, 2022. (*See* Equity Emails at 2–3.) The corresponding time stamps on the Arbitration Agreements are dated March 21, 2021 and March 16, 2022. (*See* Whitehead Decl., Ex. C at 23, 35.)

[10] Plaintiff adds that even if she did sign the Stock Agreements, she "certainly would not have been under the impression that the arbitration provision was for all claims related to [her] employment with EXL," and that because the Arbitration Agreements are in the form of "addend[a] to the [Stock Agreements] given out to select high performing employees, [she] would have no reason to think that the document addressed anything outside of the discretionary stock issuance." (Tassinari Decl. ¶ 8.) At this point it is disputed whether Plaintiff even signed the Arbitration Agreements, so the Court does not reach this argument.

disputing that she signed the Arbitration Agreements, does set this case apart from the cases cited by Defendant from this district in which the Court did compel arbitration. *Compare Jayasundera v. Macy's Logistics & Operations, Dep't of Hum. Res.*, Civ. No. 14-7455, 2015 WL 4623508, at *5 (D.N.J. Aug. 3, 2015) (no argument that there was a lack of recollection or mutual assent), *and Ricci*, 2015 WL 333312, at *4 ("Plaintiff has provided no declaration or other sworn statement in support of his argument that he had no knowledge of the Agreement and never signed the Agreement. Under Federal Rule of Civil Procedure 56, a party asserting that a fact is genuinely disputed must support that assertion by citing to particular parts of materials in the record including, *inter alia*, documents, affidavits or declarations."),[11] *with Schmell v. Morgan Stanley & Co.*, Civ. No. 17-13080, 2018 WL 1128502, at *3–4 (D.N.J. Mar. 1, 2018) (denying motion to compel arbitration because "Plaintiff presents certified statements that he has no recollection of receiving, viewing, or opening the September 2, 2015 email or accessing the . . . site . . . Plaintiff's certification presents a genuine dispute of material fact as to whether he was on notice of the agreement to arbitrate such that there was a meeting of the minds and he could mutually assent to the terms . . . .").

Additionally, as Plaintiff points out, the Equity Emails themselves suggest that the Arbitration Agreements can be automatically "deemed as accepted" two weeks following some "final communication." (Equity Emails at 2–3.) The possibility of an automated acceptance here distinguishes this case from *Gomez v. Rent-A-Ctr., Inc.*, Civ. No. 18-1528, 2018 WL 3377172, at *3–4 (D.N.J. July 10, 2018), in which the Court granted a motion to compel arbitration, despite the existence of a certification from the plaintiff that "she does not remember signing the

---

[11] Another case cited by Defendant, *Magee v. Francesca's Holding Corp.*, Civ. No. 17-565, 2020 WL 3169518, at *9–10 (D.N.J. June 15, 2020), is also inapposite. In *Magee*, the plaintiffs' argument that their assent was invalid was not that they disputed ever agreeing to the terms, like Plaintiff disputes here, but that had they known about a related pending lawsuit at the time, they "would not have assented." *Id.* at *10.

8

arbitration agreement," because the defendant "submitted *uncontradicted evidence* that ample safeguards were in place to prevent 'anyone' from signing the Arbitration Agreement . . . [a]nd *it was only by using that password . . . that her electronic signature could be affixed to the Arbitration Agreement*."[12] (emphases added).

Defendant's reply fails to fully and directly rebut Plaintiff's argument regarding automated acceptance. Rather, Defendant provides a different and competing set of facts. For example, it attests that "[t]he online portal allows users to complete the paperwork on their own time, at their own pace, from any location," (Whitehead Decl. ¶ 7); Plaintiff's signatures are a "condition of receiving her grants of stock in EXL service," (*id.* ¶ 12); "A document can only be signed when the individual is logged into the Fidelity online portal with their unique username and password. *There is no administrative backdoor to circumvent this process*," (*id.* ¶ 8 (emphasis added)); and "Plaintiff's electronic signature could have only been placed on the signature pages of the Arbitration Agreements by a person using Plaintiff's unique username and chosen password," (*id.* ¶ 4). Defendant's testimony does not assert, for example, that 1) it had reviewed its authentication trails[13] and found that Plaintiff—or a user logged in as her—*did* execute the Agreements[14]; or 2) an automated acceptance of the type described in the Equity Emails could not have resulted in Plaintiff's electronic signature in the form that it appears.

---

[12] As explained *infra*, there are competing and contradictory facts in this case regarding how Plaintiff's electronic signature could have appeared on the Arbitration Agreements.

[13] The Whitehead Declaration references such a capability but does not explicitly state if any authentication trail was traced for Plaintiff's account. (Whitehead Decl. ¶ 10.) The Whitehead Reply Declaration states: "I have reviewed Fidelity and EXL's records related to the individual identified in the portal as Marybeth Tassinari," but does not explain if those records he reviewed included an "authentication trail," or what in fact those records revealed. (Whitehead Reply Decl. ¶ 8.)

[14] Rather, the Whitehead Reply Declaration provides conclusory statements without the necessary facts to support them. (Whitehead Reply Decl. ¶ 4 ("[T]he electronic signature on Plaintiff's Arbitration Agreements could have only been made by Plaintiff." (emphasis added)); *id.* ¶ 6 ("There is a timestamp attached to both of Plaintiff's electronic signatures which can only be placed there when logged into her account." (emphasis added)); *id.* ¶ 7 ("[I]f an administrator attempted to review or sign any document, there would be no timestamp." (emphasis added)).)

In short, the Court finds, based on the competing accounts presented by the parties, that there remains a genuine issue of fact as to whether Plaintiff accepted the Arbitration Agreements appended to the 2021 and 2022 Stock Agreements.

The Court will therefore deny Defendant's motion without prejudice, and order the parties to conduct limited, expedited discovery on the issue of whether Plaintiff accepted the Arbitration Agreements. *See Corchado*, 2017 WL 627427, at *3 ("[A] court cannot make a determination about mutual assent on the present record alone without discovery."). Afterwards, Defendant may, if it deems appropriate, file a renewed motion to compel arbitration, which this Court will again review under a Rule 56 standard.

## V.   CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and Stay Proceedings will be DENIED without prejudice and the parties will be ordered to conduct limited, expedited discovery over the next 60 days. The parties will be instructed to meet and confer and to file a proposed scheduling order for that discovery, together with a deadline for the filing of any renewed motion to compel arbitration. An appropriate Order will follow.

Date: **January 16, 2024**

                                                     s/ Zahid N. Quraishi
                                                    **ZAHID N. QURAISHI**
                                                    **UNITED STATES DISTRICT JUDGE**